# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:19-cr-00197 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| GUILLERMO DIAZ ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion and Incorporated Memorandum of Law to Exclude Identification Evidence/Testimony. (Doc. No. 22). The Government filed a Response in Opposition. (Doc. No. 23). Through the Motion, Defendant seeks to exclude the eyewitness identification evidence and/or testimony in this matter. The Court held a hearing on the Motion on October 9, 2020, and the parties filed supplemental post-hearing briefs. (Doc. Nos. 38, 40). For the reasons discussed below, Defendant's Motion is **DENIED**.

### I.  FACTS

On February 8, 2019, at approximately 4:30 p.m., the victim was approached near her apartment door by an unknown male. The man pointed a gun at her and demanded her possessions, including her car keys. The man took the victim's car keys and drove off with her car. At approximately 4:43 p.m., the victim called 911 to report the robbery. During the call, she described the robber as a Hispanic male with facial hair, between 5 feet 8 inches and 5 feet 10 inches tall, wearing blue jeans and "whitish camo." (Gov. Ex. 1, Recording of 911 Call). Metro Nashville Police officers arrived at the scene around 4:51 p.m. (Doc. No. 35, Tr. at PageID # 122). Shortly thereafter, Metro Nashville Police officers arrested and detained Mr. Diaz. At the time of his arrest, Mr. Diaz was wearing a brown top and blue jeans. (*Id*. at PageID #108-112).

Officer Timothy Morgan was with the victim when Mr. Diaz was apprehended and asked her if she would be able to identify the person who robbed her, and she said yes. (*Id*. at PageID # 120). Officer Morgan transported the victim to where Mr. Diaz had been arrested. (*Id*.). When they arrived, Mr. Diaz was in the backseat of a police vehicle. (*Id*.). Officers conducted the showup around 6:03 p.m. (*Id*. at PageID #122). The victim remained in Officer Morgan's vehicle, while Mr. Diaz, who was handcuffed, was removed from the police car by another officer. (*Id*. at PageID #121). The victim viewed Mr. Diaz from the back seat of the police car parked approximately 15 feet away, looking through a clear screen between the front and back seats and windshield. (*Id*. at PageID #122). The victim identified Mr. Diaz as the individual who had robbed her. (*Id*. at PageID #121).

## II.   ANALYSIS

Defendant moves to exclude the eyewitness identification evidence and/or evidence, arguing that admission of the identification would violate due process because it was obtained through an unduly suggestive procedure and lacks the requisite reliability. The Government argues that Defendant's motion should be denied because he has failed to establish that the identification was impermissibly suggestive or that the identification is unreliable.

The Supreme Court has long recognized a due process check on the admission of eyewitness identification "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The Sixth Circuit "has prescribed a two-step analysis for determining the admissibility of identification testimony." *United States v. Washington*, 714 F.3d 962, 967 (6th Cir. 2013). "First, the defendant must show that the

identification procedure was unduly suggestive." *Id*. Second, if the defendant meets this burden, the court must evaluate "the totality of the circumstances to determine whether the identification was nevertheless reliable." *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004).

### A. Unduly Suggestive

"To be 'impermissibly suggestive,' the [identification] procedure must 'give rise to a very substantial likelihood of irreparable misidentification.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (quoting *Neil v. Biggers*, 409 U.S. 188, 197 (1972) and *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see also Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012) ("due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary"). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Unnecessary suggestiveness generally depends upon whether the witness's attention was directed to a suspect because of police conduct." *Howard v. Bouchard*, 405 F.3d 459, 469–70 (6th Cir. 2005) (internal quotation marks and citation omitted). This is an objective, totality-of-the-circumstances test examining the effects and circumstances of the identification procedure, rather than a subjective inquiry into the officer's intent. *Id*. at 470 (citing *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)).

"A showup is inherently suggestive. When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification." *Summitt v. Bordenkircher*, 608 F.2d 247, 252 (6th Cir. 1979) (showup rendered necessary by the seriousness of hospitalized robbery victim's wounds). Here, it appears the show-up was not necessary. Additionally, the circumstances of the show-up involved an individual in police

3

custody, alone, and handcuffed. Based on the foregoing, the Court concludes that the identification procedure was unduly suggestive.

### B. Reliability

"Even when an unnecessarily suggestive procedure was used, 'suppression of the resulting identification is not the inevitable consequence.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (quoting *Perry*, 565 U.S. at 239). Instead, "the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" *Perry*, 565 U.S. at 239 (quoting *Biggers*, 409 U.S. at 201). "'[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation." *Id.* (quoting *Brathwaite*, 432 U.S. at 107, 114). Where the 'indicators of [a witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed." *Id.* (quoting *Brathwaite*, 432 U.S. at 107, 114). "Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury." *Id.*

"The following factors guide the court's reliability analysis: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witnesses's level of certainty when identifying the defendant at the confrontation; and (5) the length of time between the crime and the confrontation." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). In the present case, these factors weigh in favor of reliability. The victim had a substantial opportunity to view the robber and her attention was focused. The victim and the robber exchanged words and she observed him in a close, face-to-face encounter. While the victim's description of the robber was somewhat general and not completely accurate, the discrepancy regarding the color of the robber's shirt is not enough to render her testimony so unreliable that it should be suppressed. The

4

victim showed no uncertainty in identifying Mr. Diaz as the robber, and the confrontation took place only about 90 minutes after the robbery. The Court concludes that the victim's show-up identification of Mr. Diaz is sufficiently reliable for admission.

### III. CONCLUSION

Defendant's Motion to Exclude Identification Evidence/Testimony (Doc. No. 22) is **DENIED**. However, the Court notes that this was not the ideal way to present a potential robber to a witness for identification, and the methods used in the show-up could provide ample fodder for cross examination.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE